FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 14, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DENZEL J.,[1] | No. 2:22-cv-00092-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, | **ECF Nos. 11, 12** |
| Defendant. | |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 11, 12. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 11, and grants Defendant's motion, ECF No. 12.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §

ORDER - 2

416.902(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

ORDER - 3

activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC),

ORDER - 4

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

ORDER - 5

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant

numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On November 21, 2019, Plaintiff applied for Title XVI supplemental

security income benefits alleging an amended disability onset date of November

21, 2019.[2]  Tr. 15, 103, 182-90.  Plaintiff also amended his application to request a

closed period from November 21, 2019 to January 23, 2021.  Tr. 16.  The

application was denied initially, and on reconsideration. Tr. 118-21, 125-27.

Plaintiff appeared before an administrative law judge (ALJ) on April 19, 2021.  Tr.

41-64.  On May 13, 2021, the ALJ denied Plaintiff's claim.  Tr. 12-26.

---

[2] Plaintiff previously applied for Title II and Title XVI benefits on December 1,

2016; the application was denied initially and on reconsideration, and an ALJ

denied the claim after a hearing.  Tr. 68-85.  Plaintiff appealed the denial to the

Appeals Council, and the Appeals Council declined to review the decision.  Tr. 86-

88.  Plaintiff appealed to this Court, and this Court denied Plaintiff's motion for

summary judgment on September 15, 2020.  *Denzel J. v. Andrew M. Saul,* No.

2:19-cv-00344-MKD (E.D. Wash. Sept. 15, 2020).

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since November 21, 2019. Tr. 18. At step two, the ALJ found that Plaintiff has the following severe impairments: depression and anxiety. *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. *Id.* The ALJ then concluded that Plaintiff has the RFC to perform the full range of work at all exertional levels but with the following non-exertional limitations:

> A predictable work environment with no production pace, conveyor belts, or sales quotas and only occasional and simple workplace changes, and brief superficial contact with coworkers and the general public and occasional contact with supervisors.

Tr. 19.

At step four, the ALJ found Plaintiff has no past relevant work. Tr. 22. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as warehouse checker, industrial cleaner, and store laborer. Tr. 23. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application through the date of the decision. *Id.*

ORDER - 7

On March 17, 2022, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

2. Whether the ALJ properly evaluated the medical opinion evidence. ECF No. 11 at 2.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims. ECF No. 11 at 4-7. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could

ORDER - 8

reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

416.929(c).  The ALJ is instructed to "consider all of the evidence in an

individual's record," to "determine how symptoms limit ability to perform work-

related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of his

symptoms were not entirely consistent with the evidence.  Tr. 20.

*1.  Work History*

The ALJ found Plaintiff's work history was inconsistent with his allegations.

Tr. 20.  Plaintiff's own perception of his ability to work is a proper consideration

in when considering his symptom claims.  *See Barnes v. Comm'r of Soc. Sec.*,  No.

2:16-cv-00402-MKD, 2018 WL 545722 (E.D. Wash. Jan. 24, 2018) ("Evidence of

Plaintiff's preparedness to return to work, even if an optimistic self-assessment, is

significant to the extent that the Plaintiff is willing and able to work, as that belief

ORDER - 10

indicates her allegation of symptoms precluding work are not credible."); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (approving of ALJ's rejection of Plaintiff's symptom testimony in part because Plaintiff sought work during period of alleged disability). Additionally, working with an impairment supports a conclusion that the impairment is not disabling. *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992); *see also Bray*, 554 F.3d at 1227 (seeking work despite impairment supports inference that impairment is not disabling).

While Plaintiff alleged he was unable to seek and keep a job due to his anxiety, Plaintiff started barber school in 2019 and returned to work in January 2021. Tr. 20. In August 2019, Plaintiff stated he had secured a job at a barbershop that he would be able to begin after he completed barber school. Tr. 21. Plaintiff reported barber school was going well in 2019 and 2020, and he was ultimately able to complete the program and begin working in the field. Tr. 20-21. Plaintiff contends his ability to attend school and complete part-time barber training was not inconsistent with his allegations as it was only part-time education/work. ECF No. 11 at 5-6. In August 2019, Plaintiff reported "I can't pass a criminal history background check because of an outstanding warrant in Yakima. This [makes it] hard to work." Tr. 276. In January 2021, Plaintiff reported he had to resolve legal issues and that after he completed an ankle monitoring period of three months, he

would have a job.  Tr. 21.  This indicates Plaintiff would have been capable of

obtaining full-time employment sooner but for his legal issues.  Plaintiff also

reported in November 2018 that he had been job hunting for over a year.  Tr. 282.

Although this was prior to the alleged onset date, the record demonstrates Plaintiff

sought work before and during the relevant adjudicative period, and he obtained

competitive employment.  This evidence supports a finding Plaintiff believed he

was able to work despite his symptoms.

Additionally, Plaintiff would have been able to complete his barber training

even sooner than he did, as the shutdowns caused by COVD-19 caused delays in

his completion of the program.  Plaintiff's program temporarily closed in March

2020, when Plaintiff had only 200 hours left to complete.  Tr. 290.  He was able to

return to the program in June 2020.  *Id.*  He graduated in August 2020 and passed

the licensure examination in September 2020.  Tr. 299, 302.  As such, Plaintiff was

eligible to begin working in September 2020.  However, he had to wait for his

legal charges to be resolved as they were "keeping him from getting his license."

Tr. 298.  In October 2020, Plaintiff planned to end his counseling appointments

because he had reached his goals.  Tr. 299.

The ALJ reasonably found Plaintiff's allegations of disabling anxiety and

fear of crowds were inconsistent with his ability to seek and obtain a job, and to

attend and graduate from a training program.  This was a clear and convincing

ORDER - 12

reason, supported by substantial evidence, to discount Plaintiff's symptom complaints.

### 2. Inconsistent Objective Medical Evidence

The ALJ found Plaintiff's allegations were inconsistent with the objective medical evidence. Tr. 20-21. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

Despite Plaintiff's allegations of disabling mental health symptoms, there are minimal treatment records in the file as discussed further *infra*. The limited medical records contain largely normal findings. The ALJ noted that a December 2019 examination was "entirely unremarkable," and a February 2020 examination was again unremarkable, with no significant deficits documented. Tr. 20. At Plaintiff's counseling appointments, he reported getting along well with his roommates and girlfriend, doing well in school, and obtaining a job. Tr. 20-21.

Plaintiff reported some anxiety symptoms, but also reported being happy and

stable.  Tr. 276-79, 289-91.  He had improved eye contact, was more talkative, and

appeared more comfortable at later appointments.  *Id.*  On examination, Plaintiff

was cooperative, engaged, and oriented, with normal speech and thought

processes, and he was able to recall items immediately and on delay, identify

several current events and facts, though he reported a down, depressed, and

anxious mood with a congruent affect.  Tr. 285-86.  At another examination, he

had a normal attitude and behavior, logical speech but with some delays,

moderately depressed/anxious mood and moderately constricted affect, and normal

thoughts, orientation, perception, memory, fund of knowledge, concentration,

abstract thought, insight, and judgment.  Tr. 296-97.  While Plaintiff contends the

records document abnormalities, such as the delayed speech on one examination,

the ALJ reasonably found the records overall documented generally normal

findings.  ECF No. 11 at 7.   This was a clear and convincing reason, supported by

substantial evidence, to reject Plaintiff's symptom claims.

### 3.  *Lack of Treatment*

The ALJ found Plaintiff's lack of treatment was inconsistent with his

symptom claims.  Tr. 20.  An unexplained, or inadequately explained, failure to

seek treatment or follow a prescribed course of treatment may be considered when

evaluating the claimant's subjective symptoms.  *Orn v. Astrue*, 495 F.3d 625, 638

ORDER - 14

1  (9th Cir. 2007).  And evidence of a claimant's self-limitation and lack of

2  motivation to seek treatment are appropriate considerations in determining the

3  credibility of a claimant's subjective symptom reports.  *Osenbrock v. Apfel*, 240

4  F.3d 1157, 1165-66 (9th Cir. 2001).  When there is no evidence suggesting that the

5  failure to seek or participate in treatment is attributable to a mental impairment

6  rather than a personal preference, it is reasonable for the ALJ to conclude that the

7  level or frequency of treatment is inconsistent with the alleged severity of

8  complaints.  *Molina*, 674 F.3d at 1113-14.  But when the evidence suggests lack of

9  mental health treatment is partly due to a claimant's mental health condition, it

10 may be inappropriate to consider a claimant's lack of mental health treatment when

11 evaluating the claimant's failure to participate in treatment.  *Nguyen v. Chater*, 100

12 F.3d 1462, 1465 (9th Cir. 1996).  Additionally, evidence of being motivated by

13 secondary gain is sufficient to support an ALJ's rejection of testimony evidence.

14 *See Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992).

15        The ALJ found Plaintiff began treatment at Frontier Behavioral Health in

16 late 2018 but he did not attend treatment appointments on a regular basis.  Tr. 20.

17 Plaintiff reported he was going to treatment appointments to maintain his benefits.

18 *Id.*  Plaintiff sought minimal treatment during the relevant adjudicative period.

19 Although the closed period spans a little over a year, there are less than 40 pages of

20 medical records in the file, and 12 of those pages are examinations for benefits.

ORDER - 15

Tr. 269-309.  Plaintiff cancelled multiple appointments and was late to multiple appointments during the limited occasions he attended appointments.  *See, e.g.,* Tr. 274-75.  Plaintiff contends Defendant offered post hoc reasoning, because Defendant cited to evidence that Plaintiff agreed to only monthly appointments despite a weekly appointment recommendation, but the ALJ did not cite to that evidence.  ECF No. 13 at 3 (citing ECF No. 12 at 6; Tr. 279).  While the ALJ did not cite to the specific cited record, the ALJ reasonably considered Plaintiff's minimal treatment.

Plaintiff also contends he sought treatment to manage his anxiety but concedes he reported he was attending therapy to maintain funding.  ECF No. 13 at 3-4.  Once Plaintiff obtained work and no longer needed to receive benefits, he reported he had finished his counseling goals and his services were closed.  Tr. 298.  Plaintiff also does not offer any reasons as to why he did not seek additional treatment and does not contend his mental health symptoms prevented him from seeking treatment.  As such, the ALJ reasonably considered the Plaintiff's lack of treatment and his limited treatment being motivated by his desire to maintain benefits.  This was a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

ORDER - 16

### 4. Activities of Daily Living

The ALJ found Plaintiff's activities of daily living were inconsistent with Plaintiff's symptom claims. Tr. 20-21. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

Plaintiff reported playing basketball several times per week, and he built a team for Hoop Fest in 2019. Tr. 20-21. Plaintiff reported getting along well with his seven roommates, having a positive relationship with his girlfriend, and interacting with his sister two to three times per month. Tr. 20-21, 287. As discussed *supra*, he attended barber school and was able to seek and obtain a job. Plaintiff also created music on his computer, read self-help books, played video games, went skateboarding, and went for walks. *Id.*; Tr. 221, 276. In 2019,

ORDER - 17

Plaintiff reported he was going to be performing as an artist locally.  Tr. 281.

Plaintiff reported some difficulties with daily tasks, like grocery shopping, but was

able to handle his personal care, medications, appointments, and some chores.  Tr.

293.  Plaintiff did not need reminders to take medication nor to handle his personal

care, he could prepare simple meals for himself, and did not need encouragement

to complete chores.  Tr. 219-20.  Plaintiff does not address this issue.  ECF Nos.

11, 13.

The ALJ reasonably found Plaintiff's activities, particularly his ability to

play a team sport in a competition, were inconsistent with his allegation of

disabling anxiety that prevents him from being around crowds.  This was a clear

and convincing reason, supported by substantial evidence, to reject Plaintiff's

symptom claims.  Plaintiff is not entitled to remand on these grounds.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in his analysis of the opinions of John

Arnold, Ph.D., and Patrick Metoyer, Ph.D.  ECF No. 11 at 8-15.

As an initial matter, for claims filed on or after March 27, 2017, new

regulations apply that change the framework for how an ALJ must evaluate

medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of*

*Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20

C.F.R. § 416.920c.  The new regulations provide that the ALJ will no longer "give

ORDER - 18

any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 416.920c(a)-(b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").  20 C.F.R. § 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. § 416.920c(b)(2).  Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

ORDER - 19

(2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. § 416.920c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. § 416.920c(b)(3).

The Ninth Circuit addressed the issue of whether the changes to the regulations displace the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion.  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  The Court held that the new regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies.  *Id.*  The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has

ORDER - 20

examined the claimant or merely reviewed the claimant's records.  *Id.* at 792.

However, the ALJ is not required to make specific findings regarding the

relationship factors.  *Id.*  Even under the new regulations, an ALJ must provide an

explanation supported by substantial evidence when rejecting an examining or

treating doctor's opinion as unsupported or inconsistent.  *Id.*

   *1. Dr. Arnold*

   On December 18, 2019, Dr. Arnold, an examining source, conducted a

psychological examination and rendered an opinion on Plaintiff's functioning.  Tr.

292-97.  Dr. Arnold diagnosed Plaintiff with persistent depressive disorder, early

onset, moderate; alcohol use disorder, severe, in substantial remission; cocaine use

disorder, severe, in substantial remission; cannabis use disorder, severe, in

substantial remission; anxiolytic use disorder, severe, in substantial remission;

unspecified anxiety disorder with generalized anxiety disorder and panic features;

and rule out borderline intellectual functioning.  Tr. 294.  Dr. Arnold opined

Plaintiff has no to mild limitations in his ability to understand, remember, and

persist in tasks by following very short and simple instructions, make simple work-

related decisions, and ask simple questions or request assistance; moderate

limitations in his ability to understand, remember, and persist in tasks by following

detailed instructions, perform activities within a schedule, maintain regular

attendance, and be punctual within customary tolerances without special

ORDER - 21

supervision, learn new tasks, perform routine tasks without special supervision, be aware of normal hazards and take appropriate precautions, communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and set realistic goals and plan independently; marked limitations in his ability to adapt to changes in a routine work setting; and severe limitations in his ability to complete a normal workday/workweek without interruptions from psychologically-based symptoms. Tr. 294-95. He opined Plaintiff's impairments overall have a marked impact on his functioning, and the limitations were expected to last 12 months. Tr. 295. The ALJ found Dr. Arnold's opinion was not persuasive. Tr. 21.

First, the ALJ found Dr. Arnold's opinion was not supported by his examination. *Id.* Supportability is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is. 20 C.F.R. § 416.920c(b)(2). The more relevant objective evidence and supporting explanations that support a medical opinion, the more persuasive the medical opinion is. 20 C.F.R. § 416.920c(c)(1). Dr. Arnold's examination documented Plaintiff's normal appearance, attitude, behavior, thought processes, orientation, perception, memory, fund of knowledge, concentration, and abstract though. Tr. 296-97. Plaintiff contends Dr. Arnold's examination includes abnormalities that support his opinion, because Plaintiff had significantly delayed speech at times and his mood was

ORDER - 22

moderately depressed/anxious with a congruent affect.  ECF No. 11 at 11 (citing Tr. 296).  Despite the delays in speech depressed/anxious mood and affect, Plaintiff's testing was entirely normal.

Further, Dr. Arnold opined Plaintiff's impairments overall have a marked impairment on his functioning.  Tr. 21, 295.  However, he opined Plaintiff has all mild to moderate limitations except one marked limitation in his ability to adapt to changes in a routine work setting, and one severe limitation in his ability to complete a normal workday/workweek without interruptions from psychologically based symptoms.  Tr. 294-95.  The opinion that Plaintiff's impairments overall cause a marked impairment are not supported by normal testing and Dr. Arnold's own opinion that Plaintiff generally has mild to moderate limitations.  As such, the ALJ reasonably found Dr. Arnold's opinion was not supported by his examination.

Second, the ALJ found Dr. Arnold's opinion was inconsistent with Plaintiff's ability to attend school and return to work.  Tr. 21.  Consistency with the other evidence is one of the most important factors in determining the persuasiveness of an opinion.  20 C.F.R. § 416.920c(b)(2).  "The ALJ may reject a medical opinion that is inconsistent with the claimant's work activity."  *Schultz v. Berryhill*, No. 3:16-cv-00757-JR, 2017 WL 2312951, at *4 (D. Or. Apr. 21, 2017) (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009)).  Dr. Arnold rendered his opinion in December 2019, and opined Plaintiff's

limitations would last 12 months with treatment.  Tr. 21, 294-95.  However,

Plaintiff had already started barber school by that time and had already obtained a

job offer for a job to begin after he completed schooling.  Tr. 21.  Plaintiff attended

school, and graduated in June 2020, and passed the licensure examination in

September 2020.  Tr. 299, 302.  Plaintiff planned to end his counseling services in

October 2020 because he had reached his goals.  Tr. 299.  Plaintiff's inability to

work from September 2020 to January 2021 appears to be due to his need to

resolve his legal issues and was not due to his impairments.  Tr. 298.  The ALJ

reasonably found Dr. Arnold's opinion was inconsistent with Plaintiff's ability to

attend barber school, graduate, obtain his license, and obtain employment.

Plaintiff contends he was disabled for a closed period and thus Plaintiff's

improvement and return to work is not inconsistent with Dr. Arnold's opinion.

ECF No. 11 at 11-12.  The Ninth Circuit has reasoned that work performed after

the period for which a claimant is seeking disability is not a relevant consideration

unless the work in question is wholly inconsistent with the claimed disability.  *See*

*Moore.*, 278 F.3d at 925.  Here, the ALJ did not reject Dr. Arnold's opinion only

because Plaintiff worked after the closed period.  Rather, the ALJ found the

opinion was inconsistent with Plaintiff's ability to attend barber school,

successfully complete the program, and seek and obtain competitive employment.

Tr. 21.  Plaintiff had graduated and passed the examination months prior to his

ORDER - 24

return to work, which was delayed due to his legal issues.  *Id.*  Thus, the ALJ was

considering Plaintiff's ability to complete an education program and eligibility to

work and did not reject the opinion only because of work after the closed period.

Further, even if the ALJ was considering the later work, it would not be an error.

Plaintiff's alleged inability to be around groups and alleged disabling anxiety was

wholly inconsistent with his ability to attend barber school and obtain employment

in a barber shop, which requires interacting in a group setting on an ongoing basis.

The ALJ did not err in his consideration of Dr. Arnold's opinion.

### 2. Dr. Metoyer

On February 15, 2020, Dr. Metoyer, an examining source, conducted a

psychological examination and rendered an opinion on Plaintiff's functioning.  Tr.

284-89.  Dr. Metoyer diagnosed Plaintiff with panic disorder; posttraumatic stress

disorder; major depressive disorder, recurrent, moderate; substance use disorder, in

early remission (alcohol, cocaine, opiate pills); and rule out obsessive compulsive

disorder.  Tr. 288.  Dr. Metoyer opined Plaintiff is mildly limited in his ability to

understand, remember, and persist in tasks by following detailed instructions, make

simple work-related decisions, ask simple questions or request assistance,

communicate and perform effectively in a work setting, maintain appropriate

behavior in a work setting, set realistic goals and plan independently, and learn

new tasks; he is moderately limited in his ability to interact with coworkers and the

public, maintain regular attendance in the workplace and be punctual within

customary tolerances without special supervision, complete a normal

workweek/workday without interruption from symptoms, and deal with the usual

stress encountered in the workplace; and marked limitation in his ability to perform

routine tasks without special supervision.  Tr. 288-89.  Dr. Metoyer opined

Plaintiff overall exhibited a moderate severity.  Tr. 289.

The ALJ found Dr. Metoyer's opinion was generally persuasive, but found

the opinion that Plaintiff had a marked limitation in his ability to perform routine

tasks without special supervision was rebutted by Plaintiff's ability to complete

barber school and obtain competitive employment.  Tr. 21-22.  "The ALJ may

reject a medical opinion that is inconsistent with the claimant's work activity."

*Schultz*, No. 3:16-cv-00757-JR, 2017 WL 2312951, at *4.  As discussed *supra*, the

ALJ reasonably found Plaintiff's ability to attend barber school, graduate from the

program, obtain his license and seek and obtain employment was inconsistent with

his allegations of disabling mental health limitations.  Plaintiff contends his ability

to attend barber school was not inconsistent with the opinion, but Plaintiff did not

present any evidence he had special supervision to complete his barber schooling.

ECF No. 11 at 14-15.  Plaintiff contends the schooling did not require the same

demands as competitive employment and he had instructors to help; however,

ORDER - 26

Plaintiff was able to graduate, complete the licensure examination, and was eligible to begin working in September 2020 but for his legal issues, as discussed *supra.*

Plaintiff also contends that the ALJ erred in accepting Dr. Metoyer's opinion that Plaintiff has a moderate limitation in his ability to maintain regular attendance in the workplace, without finding Plaintiff to be disabled.  ECF No. 11 at 15.  Plaintiff contends a moderate limitation in that area of functioning is disabling.  *Id.*  Dr. Metoyer did not define moderate limitations in his opinion, thus the ALJ appropriately interpreted the opinion and translated it into vocational terms in the RFC.  *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  The ALJ's interpretation of the opinion is reasonable, and when there may be more than one rational interpretation of evidence, the Court must defer to the ALJ's finding.  *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004).  Further, Plaintiff does not cite any case law nor regulation to support his contention that a moderate limitation is disabling.  ECF No. 11 at 15.  As two marked limitations, or one extreme limitation is required to meet a listing, Plaintiff's contention that a single moderate limitation should be found disabling is not consistent with Social Security's regulations nor relevant case law.  *See* 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00.  The ALJ did not err in his consideration of Dr. Metoyer's opinion.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED July 14, 2023.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 28